UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEBASTIAN BROWN PRODUCTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>MUZOOKA INC., et al.,<br><br>Defendants. | Case No. 15-CV-01720-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 68 |

Plaintiff Sebastian Brown Productions, LLC ("Plaintiff") sues Defendant Muzooka, Inc. ("Muzooka" or "Defendant") for unfair competition and trademark infringement under federal and state law.  ECF No. 65 (First Amended Complaint, or "FAC").  Before the Court is Defendant's motion to dismiss, and, in the alternative, for judgment on the pleadings.  ECF No. 68.  As explained below, the Court construes this motion as a motion to dismiss.  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to dismiss with prejudice.

United States District Court
Northern District of California

United States District Court
Northern District of California

I.      **BACKGROUND**

   A. **Factual Background**

     1. **Plaintiff's Business and Trademark**

Plaintiff is a California limited liability company headquartered in Livermore, California. FAC ¶ 1.  Plaintiff owns and operates the digital media storefront MuZook at muzook.com.  *Id.* Plaintiff aims to create "a new and unique art form in multi-media books, multi-media audio, and/or audiovisual works," including e-books, multi-media songs, short films, music videos, and animated short and feature films together with streaming live or recorded audio and video.  *Id.* ¶ 8. Through MuZook, Plaintiff advertises and sells downloadable music, videos, and books.  *Id.* ¶ 9. Plaintiff's e-book has also been available for purchase on Apple's iTunes App Store since November 8, 2015.  *Id.* ¶ 17.  Additionally, MuZook has an "artists' collaboration program . . . to promote cooperation among various creative artists" in making "literature, music, video, movies, soundtracks, e-books, concerts and other forms of entertainment."  *Id.* ¶¶ 7, 10.  Plaintiff plans to sell the multimedia produced by the artists' collaboration program on muzook.com.  *Id.* ¶ 7.

Plaintiff's sole owner, the individual J. Michael Miller ("Miller"), applied for the "Muzook Mark" under an "intent-to-use" application filed September 12, 2011.  FAC Exs. A, G.  Such an application permits an applicant with a bona fide intention to use a mark to effectively reserve the mark and establish a constructive priority date before the mark is actually used in commerce.  15 U.S.C. §§ 1051(b), 1057(c).  To complete registration, an intent-to-use applicant must file an allegation of use indicating that the mark has been used in commerce.  *Id.* § 1051(b)–(d).  Miller's intent-to-use application sought to register the Muzook Mark for, among other similar services, "collaboration services delivered over the Internet and/or over another publicly accessible network; collaboration services for enabling persons such as writers, musical artists and illustrators to collaborate with each other over a publicly accessible network; collaboration services for enabling persons such as writers, musical artists and illustrators to collaborate with each other to create works incorporating multiple media elements such as narrative textual content, music and illustrations in works of fiction and non-fiction."  FAC ¶ 11.

2

United States District Court
Northern District of California

On October 1, 2011, Miller assigned "[Miller's] entire right title and interests in and to the trademarks identified in Schedule A attached hereto (the "Marks"), together with that part of [Miller's] business to which the Marks pertain, which business is ongoing and existing, the goodwill of the business symbolized by the Marks, and all registrations and applications therefor." FAC Ex. C. "Schedule A" of the assignment lists only the Muzook Mark intent-to-use application. *See id.* Miller's assignment to Plaintiff included "any renewals, divisionals and extensions of the registrations or the applications." *Id.* Shortly after the assignment, on December 19, 2011, Miller filed a patent application for a "system and method for the provision of multimedia materials," which specifically uses the word "Muzook" in an exemplary webpage illustrating the functioning of Miller's system. ECF No. 72. The U.S. Patent and Trademark Office ("PTO") issued Miller U.S. Patent No. 9,171,179 for this system. *Id.*

On August 30, 2013, the PTO granted a request to divide Plaintiff's intent-to-use application into two applications: (1) a "parent" application, serial number 85/420,834, which contained services for which Plaintiff did not claim Muzook was in use;[1] and (2) a "child" or "divisional" application, serial number 85/980,000, which contained services for which Plaintiff did claim the mark was in use. *Id.* ¶ 16; RJN Ex. B. Specifically, the child application sought to register the Muzook Mark for "collaboration services, namely, telecommunication access services which allow parties to view, adapt, and share materials such as narrative textual content, music and illustrations in works of fiction and non-fiction to enable persons such as writers, musical artists and illustrators to collaborate with each other within or across disciplines to compare work over a publicly accessible network to compose e-books and works incorporating multiple media elements such as narrative textual content, music and illustrations in works of fiction and non-

---

[1] These services included, among others: "collaboration services delivered over the Internet and/or over another publicly accessible network; collaboration services for enabling persons such as writers, musical artists and illustrators to collaborate with each other over a publicly accessible network; collaboration services for enabling persons such as writers, musical artists and illustrators to collaborate with each other to create works incorporating multiple media elements such as narrative textual content, music and illustrations in works of fiction and non-fiction." ECF No. 69 (Defendant's Request for Judicial Notice, or "RJN") Ex. B.

United States District Court
Northern District of California

1    fiction for electronic devices such as smartphones, computers, e-readers, touchscreen computers,

2    and tablets." RJN Ex. B.

3         Based on a statement of use filed August 21, 2013,[2] the child application matured in to

4    U.S. Trademark Registration Number 4,419,977 on October 15, 2013. FAC Ex. B (registration);

5    RJN Ex. C (statement of use). The first use in commerce of the Muzook Mark was recorded as

6    August 14, 2013. FAC Ex. B. As noted above, Plaintiff has "for several years" used the Muzook

7    Mark in connection with the MuZook digital storefront and associated downloadable products,

8    business promotion activities, and collaboration services. *Id.* ¶ 7, 14, 17–18. By contrast, Plaintiff

9    never filed a statement of use for the parent application. The parent application thus remained an

10   intent-to-use application, and is now abandoned. *See* Opp. at 8; 15 U.S.C. § 1051(d)(2) (limiting

11   time to file a statement of use).

12        On December 7, 2015, Miller confirmed the October 1, 2011 assignment of the Muzook

13   Mark to Plaintiff. ECF No. 84 (Corrected Exhibit D to the FAC). Miller also executed another

14   assignment of the Muzook Mark to Plaintiff, "[t]o the extent that any rights related to the Mark

15   were not transferred by the October 1, 2011 assignment." *Id.*

16        **2. Defendant's Business and Trademark**

17        Plaintiff alleges that Defendant infringes Plaintiff's Muzook Mark through Defendant's

18   use of the confusingly similar "Muzooka" trademark. Defendant, a Delaware corporation,

19   operates the website muzooka.com as well as a dedicated mobile app called Muzooka. *Id.* ¶¶ 2,

20   20–21. Defendant's website and mobile app allow users to stream audio in the form of music

21   playlists or individual tracks, and offer "interactive capabilities" for sharing listening activity

22   through social media. *Id.* ¶ 20. The website and app also allow users to browse artist biographies,

23   view art in connection with those biographies, and purchase select tracks. *Id.* Additionally,

24   Defendants operate "Muzooka" Twitter, Facebook, and Tumbler accounts in connection with the

25

26   ───────────────
     [2] The prosecution history of the Muzook Mark indicates that statements of use were also filed on
27   July 14 and 18, 2013. RJN Ex. A. The contents of these statements of use are not in the record.
     However, given that the PTO lists August 14, 2013 as the first use in commerce of the Muzook
     Mark, it is clear that the PTO relied on the statement of use filed on August 21, 2013.

28

4

website and mobile app. *Id.* ¶¶ 20, 23–24.

Muzooka filed for the "Muzooka Mark" on December 19, 2011. *Id.* ¶ 25, Ex. O. The PTO registered the Muzooka Mark on December 10, 2013, as U.S. Trademark Registration Number 4,448,314. RJN Ex. E. The Muzooka Mark is registered for, among other services, "computer software for use in the delivery, distribution and transmission of digital music and entertainment-related audio, video, text and multimedia content; computer software for enabling transmission, storage, sharing, collection, editing, organizing and modifying audio, video, messages, images and other data, including for use in social networking and online chats for use in creating social networking databases and for use in social networking database management." *Id.* According to the registration, the Muzooka Mark was first used in commerce on December 2, 2011. *Id.*

**B. Procedural History**

On January 6, 2014, Plaintiff filed suit in the U.S. District Court for the District of Delaware against Muzooka, Muzooka's corporate predecessor Ivory Octaves, LLC ("Ivory Octaves"), and Muzooka co-founders Shawn Wilson ("Wilson") and Chester Aldridge ("Aldridge") (collectively, "Defendants"). ECF No. 1. Plaintiff asserted three causes of action against each defendant: (1) unfair competition (without specifying whether the cause of action arose under a statute or the common law); (2) infringement of common law trademark rights; and (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). *Id.* ¶¶ 39–54.

On June 6, 2014, after no appearance by Defendants, the Delaware district court entered default as to all defendants. ECF No. 11. The parties then stipulated to set aside the entry of default, which the Delaware district court granted on June 11, 2014. ECF No. 12. On March 30, 2015, the Delaware district court concluded that it lacked personal jurisdiction over the individual defendants and transferred the case to the U.S. District Court for the Northern District of California. ECF No. 26–27.

On November 11, 2015, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 64. First, the Court dismissed Ivory Octaves with prejudice because Ivory Octaves converted to Muzooka and was no longer in existence. *Id.* at 7. Second, the Court found

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

that Plaintiff failed to properly serve Wilson and Aldridge, and extended the time for service. *Id.* at 7–10. Third, the Court rejected Defendants' argument that the complaint impermissibly lumped Defendants together in Plaintiff's claims for trademark infringement. *Id.* at 10–12. However, the Court concluded that, to the extent that the complaint alleged that Wilson and Aldridge had contributory or vicarious liability for inducing trademark infringement, the complaint improperly failed to differentiate between Defendants. Accordingly, the Court dismissed with leave to amend Plaintiff's claims to the extent that Plaintiff attempted to state a claim for secondary liability. *Id.* at 12–13.

Lastly, the Court concluded that Plaintiff failed to state a claim. The Court dismissed Plaintiff's common law trademark infringement and Lanham Act unfair competition claims because Plaintiff failed to demonstrate an ownership interest in a mark. *Id.* at 14–17. Specifically, the Court concluded that Plaintiff insufficiently alleged ownership of the registered Muzook Mark because the PTO listed Miller—not Plaintiff—as the owner of the registered mark. *Id.* at 15–16. Moreover, Plaintiff did not provide any agreement assigning the Muzook Mark from Miller to Plaintiff, and an assignment was not otherwise reflected in the record. *Id.* The Court found that Plaintiff did own the parent application, which had been divided from the child application that matured into the registered Muzook Mark. However, the Court concluded that the parent application did not provide Plaintiff priority over Defendant because the parent application remained an intent-to-use application. *Id.* at 16. Further, the Court concluded that Plaintiff failed to allege that Plaintiff actually used the Muzook Mark in commerce before Defendant used the Muzooka Mark. *Id.* at 16–17. Thus, the Court dismissed, with leave to amend, Plaintiff's common law trademark infringement and Lanham Act unfair competition claims.

Finally, the Court dismissed Plaintiff's unspecified unfair competition claim because the complaint and the briefing failed to clarify whether Plaintiff intended to state a statutory or common law cause of action. *Id.* at 17–18. Because the Court could not determine what claim Plaintiff alleged, the Court concluded that Plaintiff failed to state a claim for relief. However, the Court granted Plaintiff leave to amend. *Id.* at 19. The Court noted that "failure to cure the

6

United States District Court
Northern District of California

1    deficiencies identified in this Order will result in a dismissal with prejudice." *Id.* at 19.

2         On December 11, 2015, Plaintiff filed the FAC. ECF No. 65. In the FAC, Plaintiff asserts

3    three claims against Muzooka only: (1) "statutory and common law unfair competition"; (2)

4    infringement of common law trademark rights; and (3) unfair competition under the Lanham Act,

5    15 U.S.C. § 1125. *Id.* ¶¶ 35–50. On December 29, 2015, Defendant filed a motion to dismiss,

6    and, in the alternative, for judgment on the pleadings, ECF No. 68 ("Mot."), as well as a request

7    for judicial notice, ECF No. 69. That same day, Defendant answered the FAC and filed a

8    counterclaim. ECF No 70. On January 12, 2016, Plaintiff opposed Defendant's motion. ECF No.

9    71. Defendant replied on January 19, 2016. ECF No. 74.

10        On March 10, 2016, Plaintiff corrected one of the exhibits attached to the FAC. ECF No.

11   84. The original exhibit attached to the FAC is the October 1, 2011 assignment from Miller to

12   Plaintiff. ECF No. 65-4. The corrected exhibit is Miller's December 7, 2015 confirmation of the

13   original assignment. ECF No. 84. Plaintiff provided no explanation for the delay in correcting the

14   exhibit.

15   **II.    LEGAL STANDARD**

16      **A. Rule 12(b)(6) Motion to Dismiss**

17        Defendant characterizes the instant motion as "a motion to dismiss, and, in the alternative,

18   for judgment on the pleadings." ECF No. 68. Both a motion to dismiss pursuant to Federal Rule

19   of Civil Procedure 12(b)(6) and a motion for judgment on the pleadings pursuant to Federal Rule

20   of Civil Procedure 12(c) test the legal sufficiency of the complaint. The "principal difference"

21   between the two motions "is the time of filing." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d

22   1188, 1192 (9th Cir. 1989) (noting that a Rule 12(b)(6) motion is "functionally identical" to a Rule

23   12(c) motion, and courts apply the "same standard"). A Rule 12(b)(6) motion "must be made

24   before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6). By contrast, a

25   motion for judgment on the pleadings pursuant to Rule 12(c) is proper "[a]fter the pleadings are

26   closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Ninth Circuit has held

27   that "the pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have

28

7

1  been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419

2  F.3d 1058, 1061 (9th Cir. 2005).

3          Here, Defendant filed the instant motion on December 29, 2016—immediately before

4  Defendant filed both an answer and a counterclaim.  *See* ECF No. 68 (instant motion); ECF No.

5  70 (answer and counterclaim).  Thus, the pleadings were not "closed," as Plaintiff had not

6  answered Defendant's counterclaim.  *See Doe*, 419 F.3d at 1061.  Because Defendant filed the

7  instant motion before the pleadings were closed, the Court treats the instant motion as a motion to

8  dismiss under Rule 12(b)(6).  *See id.* (noting that a Rule 12(c) motion filed before the close of the

9  pleadings is "premature").

10         A motion to dismiss under Rule 12(b)(6) should be granted when a complaint does not

11 plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

12 *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

13 factual content that allows the court to draw the reasonable inference that the defendant is liable

14 for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

15 standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

16 defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

17         For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

18 in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

19 party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The

20 Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

21 *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's

22 complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

23 for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the

24 Court "assume the truth of legal conclusions merely because they are cast in the form of factual

25 allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere

26 "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

27 dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

**B. Leave to Amend**

If the court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

**III.   DISCUSSION**

As a preliminary matter, the Court addresses the parties' requests for judicial notice. The Court then turns to Plaintiff's claims for common law trademark infringement and Lanham Act unfair competition. Lastly, the Court addresses Plaintiff's claim for "statutory and common law unfair competition."

**A. Judicial Notice**

On a motion to dismiss, the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The Court may take judicial notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[M]atters of public record" are the appropriate subjects of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

The Court GRANTS Defendant's unopposed request for judicial notice of the registration certificate for the Muzooka Mark and additional documents from the PTO's Trademark Status and

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  Document Retrieval database.  These documents are matters of public record and the proper

2  subjects of judicial notice.  *See id.*  The Court DENIES as moot Defendant's request for judicial

3  notice of declarations previously submitted in the instant litigation by Wilson, Aldridge, and

4  Defendant's attorney.  These declarations are relevant primarily to earlier motions to transfer

5  venue and dismiss for insufficient service, and to the likelihood of confusion, which the Court

6  does not reach below.  The Court does not rely on the declarations for the instant motion.

7       Plaintiff did not file a request for judicial notice.  However, Plaintiff attaches two exhibits

8  to the opposition: (1) U.S. Patent No. 9,171,179, which the PTO issued to Miller; and (2) a

9  declaration by Miller providing additional information about Miller's plan for, and registration of,

10  the Muzook Mark.  Opp. Exs. A–B.  In ruling on a motion to dismiss, the Court may not consider

11  these exhibits, which are neither "allegations contained in the pleadings" nor "attached to the

12  complaint," unless the exhibits are "properly subject to judicial notice."  *Akhtar*, 698 F.3d at 1212.

13  Thus, although Plaintiff did not file a request for judicial notice, the Court treats Plaintiff's

14  attachment of these two exhibits to the opposition as a request for judicial notice.

15       Defendant does not oppose judicial notice of Miller's patent.  Opp. Ex. B.  This document

16  is a matter of public record and the proper subject of judicial notice.  *Lee*, 250 F.3d at 689.

17  Accordingly, the Court GRANTS Plaintiff's request for judicial notice of Miller's patent.

18  However, Defendant opposes judicial notice of Miller's declaration, *see* Reply at 4, and the facts

19  in the declaration are subject to reasonable dispute, *see* Fed. R. Evid. 201(b).  Accordingly, the

20  Court DENIES Plaintiff's request for judicial notice of Miller's declaration.

21  **B.  Failure to State a Claim for Common Law Trademark Infringement and for Unfair
       Competition under the Lanham Act**

22

23     **1.  Ownership Interest in a Mark**

24       Plaintiff's claims for both trademark infringement under California common law and

25  unfair competition under the federal Lanham Act require Plaintiff to allege: (1) a protectable

26  ownership interest in a mark, and (2) the likelihood of the infringing mark being confused with the

27  plaintiff's mark.  *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005) (California

28

10

1   common law) (citing *Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979));

2   *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999)

3   (unfair competition under the Lanham Act).

4         An ownership interest in a mark is demonstrated through priority of use.  *See Wood*, 375 F.

5   Supp. 2d at 948 (citing *Am. Petrofina*, 596 F.2d at 897 ("[W]hosoever first adopts and uses a trade

6   name, either within or without the state, is its original owner.")); *Sengoku Works Ltd. v. RMC*

7   *Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard

8   test of ownership is priority of use.").  Use of a mark "typically occurs when a mark is used in

9   conjunction with the actual sale of goods or services" and "creates an association among

10   consumers between the mark and the mark's owner." *Brookfield Commc'ns*, 174 F.3d at 1051

11   ("The Lanham Act grants trademark protection only to marks that are used to identify and to

12   distinguish goods or services in commerce . . . .").  "The first to use a mark is deemed the 'senior'

13   user and has the right to enjoin 'junior' users from using confusingly similar marks in the same

14   industry and market or within the senior user's natural zone of expansion." *Id.* at 1047.

15         Additionally, federal registration of a mark is "prima facie evidence of [the registrant's]

16   ownership" of the mark. *See Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d

17   1118, 1124 (9th Cir. 2006).  Thus, once a mark is registered, the registrant is granted

18   "constructive-use" of the mark dating back to the filing date of an intent-to-use application. S*ee*

19   *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3 (9th Cir. 2010).

20   Accordingly, a plaintiff may establish priority (and thus ownership of a mark) for claims under the

21   Lanham Act through actual or constructive use of the mark.  However, "[r]egistration under the

22   Lanham Act has no effect on the registrant's rights under the common law, which requires a mark

23   to have been used in commerce before a protectible [sic] ownership interest in the mark arises."

24   *Dep't of Parks*, 448 F.3d at 1125.  Consequently, a plaintiff asserting a common law trademark

25   infringement claim may only establish priority based on the actual use of the mark.  *See id.*

26         In the instant case, Plaintiff asserts a constructive-use date of September 12, 2011, the date

27   that Miller filed the intent-to-use application that later matured into the Muzook Mark.  Plaintiff

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    also provides an October 1, 2011 assignment transferring the intent-to-use application, and any

2    resulting child applications or registrations, from Miller to Plaintiff.  FAC Ex. C.  The

3    constructive-use date of September 12, 2011 would provide priority over Defendant, whose first

4    use in commerce of the Muzooka Mark was in December 2011.  *See* Opp. at 2.

5           Defendant does not challenge the existence of an assignment of the Muzook Mark from

6    Miller to Plaintiff.  Nor does Defendant dispute that Plaintiff's constructive-use date, if valid,

7    establishes priority over Defendant.  Rather, Defendant argues that the October 1, 2011

8    assignment of the original intent-to-use application violates 15 U.S.C. § 1060(a)(1), which in turn

9    voids the Muzook Mark registration.  Thus, Defendant says, Plaintiff's priority date is August 14,

10   2013, when Plaintiff first actually used the Muzook Mark in commerce—two years after

11   Defendant's first use of the Muzooka Mark.  *See* RJN Ex. C (statement of use for the Muzook

12   Mark).  Accordingly, Defendant argues that Plaintiff fails to allege priority and an ownership

13   interest in the Muzook Mark.

14          To determine priority, the Court first examines Plaintiff's actual use of the Muzook Mark

15   in commerce, and then turns to Plaintiff's constructive-use of the Muzook Mark.

16          **2.   Actual Use in Commerce**

17          As noted above, Plaintiff does not rely on Plaintiff's actual use of the Muzook Mark to

18   establish priority over Defendant.  Instead, Plaintiff relies solely on Plaintiff's constructive use of

19   the Muzook Mark, established by the federal registration of the Muzook Mark.  *See* Opp. at 8.

20   However, "[r]egistration under the Lanham Act has no effect on the registrant's rights under the

21   common law, which requires a mark to have been used in commerce before a protectible [sic]

22   ownership interest in the mark arises."  *Dep't of Parks*, 448 F.3d at 1125; *see also Spin Master,*

23   *Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 850 (C.D. Cal. Mar. 7, 2012) (finding that

24   constructive priority under the Lanham Act is "a statutory construct for a federal claim," and thus

25   "in a common law priority dispute, [a plaintiff] must still show that it actually used the mark

26   before the alleged infringer to gain common law priority").  Accordingly, for Plaintiff's common

27   law trademark infringement claim, the Court must examine the actual use of the Muzook Mark to

28

12

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    determine whether Plaintiff has priority over Defendant.

2        Plaintiff does not dispute that Defendant's first use of Defendant's Muzooka Mark in

3    commerce occurred in December 2011.  Opp. at 2; *see also* RJN Ex. E (registration of the

4    Muzooka Mark).  Accordingly, in order to establish priority for Plaintiff's common law trademark

5    infringement claim, Plaintiff must allege that Plaintiff actually used the Muzook Mark in

6    commerce before December 2011.  *See Wood*, 375 F. Supp. 2d at 947–48 ("To state a claim of

7    trademark infringement under California common law, a plaintiff need allege . . . their prior use of

8    the trademark . . . .").

9        In the FAC, Plaintiff alleges that "Plaintiff's services, provided under the [Muzook Mark],

10   have been offered consistently and continuously since the filing of the statement of use."  FAC

11   ¶ 41.  The statement of use was filed on August 21, 2013, and identifies August 14, 2013 as the

12   Muzook Mark's first use in commerce.  RJN Ex. C.  Plaintiff also alleges that "for several years"

13   Plaintiff has engaged in promoting the production of creative works and developing the MuZook

14   website.  FAC ¶ 7.  The only other date given in the FAC relevant to Plaintiff's use of the Muzook

15   Mark is the sale of Plaintiff's downloadable e-book in Apple's iTunes App Store beginning on

16   November 8, 2015.  *Id.* ¶ 17.

17       Plaintiff's allegations are facially insufficient to plead an actual use in commerce before

18   December 2011.  As seen above, the earliest date that Plaintiff alleges use of the Muzook Mark is

19   in 2013—two years after Defendant's first use of Defendant's Muzooka Mark.  Accordingly,

20   Plaintiff fails to allege priority over Defendant for the purpose of Plaintiff's common law

21   trademark infringement claim.  *See Dep't of Parks*, 448 F.3d at 1125 (noting that, under the

22   common law, a mark must "have been used in commerce before a protectible [sic] ownership

23   interest in the mark arises").  Because priority is a necessary element of common law trademark

24   infringement, the Court GRANTS Defendant's motion to dismiss as to Plaintiff's common law

25   trademark infringement claim.  *See Wood*, 375 F. Supp. 2d at 947–48.

26       **3.  Constructive Use under the Muzook Mark Registration**

27       The Court now turns to Plaintiff's constructive use of the Muzook Mark, which may

28
13

United States District Court
Northern District of California

United States District Court
Northern District of California

1  establish priority for Plaintiff's Lanham Act claim.  As noted above, Plaintiff asserts a

2  constructive-use date of September 12, 2011, the date of the filing of the intent-to-use application

3  that later matured into the Muzook Mark registration.  Defendant argues that Plaintiff may not rely

4  on this date because the assignment of the intent-to-use application to Plaintiff violates 15 U.S.C.

5  § 1060(a)(1), and therefore the application and resulting registration are void.

6          Section 1060(a)(1) governs the assignment of registered trademarks and intent-to-use

7  applications.  This section provides:

8          A registered mark or a mark for which an application to register has been filed shall
           be assignable with the good will of the business in which the mark is used, or with
9          that part of the good will of the business connected with the use of and symbolized by
           the mark.  Notwithstanding the preceding sentence, no [intent-to-use
10         application] shall be assignable prior to the filing of an amendment under section
           1051(c) of this title to bring the application into conformity with section 1051(a) of
11         this title or the filing of the verified statement of use under section 1051(d) of this
           title, except for an assignment to a successor to the business of the applicant, or
12         portion thereof, to which the mark pertains, if that business is ongoing and existing.

13  15 U.S.C. § 1060(a)(1).  Thus, an intent-to-use application is not freely assignable.  An applicant

14  may assign an intent-to-use application in only two circumstances: (1) after the applicant has filed

15  an allegation of use[3]; or (2) if the application is transferred "to a successor to the business of the

16  applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing."

17  *See id.*  In other words, an intent-to-use applicant may not assign an intent-to-use application

18  before filing an allegation of use, unless the application is transferred with at least part of the

19  applicant's "ongoing and existing" business to which the mark pertains.  "Violating this 'anti-

20  trafficking rule' voids the assignment as well as the underlying application and resulting

21  registration."  *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *7 (C.D. Cal. June 8, 2015)

22  (citing *Clorox Co. v. Chemical Bank*, 40 U.S.P.Q.2d 1098, 1104 (TTAB 1996) (precedential)).

23

24  [3] An intent-to-use applicant must demonstrate use of a mark in commerce before a registration will
    be granted.  Such a showing is commonly called an "amendment to allege use" if filed prior to
25  publication, *see* 15 U.S.C. § 1051(c), or a "statement of use" when filed after, *see* 15 U.S.C.
    § 1051(d).  The differences are not relevant to the instant case, and thus the Court refers to both
26  generally as an "allegation of use."  *See Central Garden & Pet Co. v. Doskocil Mfg. Co.*, 108
27  U.S.P.Q.2D (BNA) 1134, 1146 n.23 (TTAB 2013) (precedential) (using "allegation of use" to
    refer to amendment to allege use and statement of use).

28
                                                14

1     In the instant case, Plaintiff does not dispute that the intent-to-use application resulting in

2     the Muzook Mark registration was assigned before an allegation of use was filed.  Specifically, on

3     October 1, 2011, Miller assigned the intent-to-use application to Plaintiff.  FAC Ex. C.  No

4     statement of use was filed until August 21, 2013—almost two years after the assignment.

5     Accordingly, the assignment violates § 1060(a)(1) unless the assignment meets the statutory

6     exception of being assigned to "a successor to the business of the applicant, or portion thereof, to

7     which the mark pertains, if that business is ongoing and existing."  15 U.S.C. § 1060(a)(1).

8          The parties dispute whether Plaintiff succeeded to an "ongoing and existing" business to

9     which the Muzook Mark pertained.  Neither the Ninth Circuit nor any district court within the

10    Ninth Circuit has determined when an applicant assigns a business "to which a mark pertains" that

11    is "ongoing and existing" for purposes of § 1060(a)(1).  However, the PTO's Trademark Trial and

12    Appeal Board ("TTAB"), an authority "whose expertise we respect and whose decisions create

13    expectations," *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1095 (9th Cir.

14    2004), provides some guidance.

15         First, the TTAB has stated that the "ongoing and existing" business exception to

16    § 1060(a)(1) does not abrogate the requirement that the assignment of a trademark must include

17    goodwill.  *See Central Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 U.S.P.Q.2D (BNA) 1134,

18    1147 (TTAB 2013) (precedential).  "[T]he law is well settled that there are no rights in a

19    trademark alone" and that no rights may be transferred without the goodwill of the business

20    connected with the use of the mark.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280,

21    1289 (9th Cir. 1992) (alteration in original); *see also Oculu*, 2015 WL 3619204, at *7 ("As a

22    theoretical matter, '[a] trademark exists only in connection with an on-going business.  If the

23    'assignor' has made no trademark use of a designation, then there are no trademark rights to

24    assign.'") (quoting 3 McCarthy on Trademarks and Unfair Competition § 18:6 (4th ed.)).  "The

25    purpose behind requiring that goodwill accompany the assigned mark is to maintain the continuity

26    of the product or service symbolized by the mark and thereby avoid deceiving or confusing

27    consumers."  *E. & J. Gallo Winery*, 967 F.2d at 1289.  This goodwill requirement is reflected in

28

15

United States District Court
Northern District of California

1   the first sentence of § 1060(a)(1), which provides that "a mark for which an application to register

2   has been filed shall be assignable with the good will of the business in which the mark is used."

3   15 U.S.C. § 1060(a)(1).  The "ongoing and existing" business exception to § 1060(a)(1) does not

4   purport to alter this goodwill requirement.  *See Central Garden*, 108 U.S.P.Q.2D at 1147 ("*Any*

5   transfer of a trademark must include the goodwill associated with the mark, because without

6   goodwill, there is no trademark to transfer.").[4]

7        Second, the TTAB has stated that the assignment of an "ongoing and existing" business

8   involves more than the assignment of goodwill alone.  *Central Garden*, 108 U.S.P.Q.2d at 1147,

9   1149–50 (concluding that assignment violated § 1060(a)(1) when the assignment transferred only

10  the intent-to-use application and goodwill, without any of the applicant's ongoing and existing

11  business).  However, the TTAB has provided conflicting guidance on precisely what constitutes an

12  "ongoing and existing" business.  *See Creative Arts by Calloway, LLC v. Brooks*, 2012 WL

13  6732907, at *7 n.18 (S.D.N.Y. Dec. 27, 2012) (noting that the "law is not clear on this point").

14       In *Railrunner N.A., Inc. v. New Mexico Department of Transportation*, the TTAB

15  determined that a business is "ongoing and existing" for the purpose of § 1060(a)(1) only if "the

16  applicant actually has such a business, *i.e.*, the applicant is already providing the goods or services

17  recited in the application."  2008 WL 8973295, at *2 (TTAB July 17, 2008) (non-precedential).

18  This restriction, the TTAB held, is consistent with § 1060(a)'s legislative history, which reveals

19  Congress's concern that intent-to-use applications "may lead to trafficking in marks which are not

20  yet in use."  *Id.*  The TTAB then examined the assignment of an intent-to-use application from the

21  New Mexico Mid-Region Council of Governments ("MRCOG") to the New Mexico Department

22

23  ⁴ To address the assignment of an intent-to-use application under the "ongoing and existing"
    business exception to § 1060(a)(1), United States district courts have also concluded that the
24  assignment must include the goodwill associated with a mark.  *See Creative Arts by Calloway,
    LLC v. Brooks*, 2012 WL 6732907, at *5 (S.D.N.Y. Dec. 27, 2012) ("Plaintiff seems to
25  conceptualize goodwill as a concept independent of both a trademark and an 'ongoing and
    existing' business, rather than synonymous with the part of an 'ongoing and existing' business that
26  a trademark symbolizes."); *Greene v. Ab Coaster Holdings, Inc.*, 2012 WL 4442749, at *9 (S.D.
    Ohio Sept. 25, 2012) (concluding that assignment requires transfer of goodwill); *Fitzpatrick v.
27  Sony-BMG Music Entm't, Inc.*, 2010 WL 3377500, at *2 (S.D.N.Y. Aug. 24, 2010) ("[W]here a
    trademark is assigned 'in gross,' without its accompanying goodwill, the assignment is invalid.").

28
Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1  of Transportation (the "Department") before filing an allegation of use.  *Id.* at *3.  The assignment

2  did not purport to transfer any portion of MRCOG's business, and the record revealed no evidence

3  of transfer of MRCOG's assets or liabilities.  Accordingly, the TTAB held that the Department

4  was not a successor to MRCOG's business and the assignment violated § 1060(a)(1).  *Id.* at *6.

5         The *Railrunner* approach was adopted by the U.S. District Court for the Southern District

6  of Ohio in *Greene v. Ab Coaster Holdings, Inc.*, 2012 WL 4442749 (S.D. Ohio Sept. 25, 2012).  In

7  *Greene*, Bodytime Wellness, LLC assigned an intent-to-use application for the mark "Ab Coaster"

8  before filing a statement of use.  *Id.* at *7.  At the time of the assignment, Bodytime Wellness,

9  LLC was actively engaged in the distribution of other wellness products and was developing the

10  Ab Coaster product.  *Id.* at *8.  The district court, relying on *Railrunner*, found that Bodytime

11  Wellness, LLC needed to "provid[e] goods or services in commerce related to the Ab Coaster

12  mark" in order to validly assign the Ab Coaster intent-to-use application.  *Id.* at *10.  Applying

13  this rule, the district court found that "the business of developing the product that would in the

14  future be marked with the Ab Coaster trademark" did not establish goodwill and was "not the type

15  of ongoing and existing business sufficient to fit" into § 1060(a)(1).  *Id.*  Consequently, the Court

16  found that the assignment violated § 1060(a)(1).  *Id.*

17         By contrast, in *Exel Oyj v. D'Ascoli*, the TTAB stated that § 1060(a)(1) "cannot be read to

18  require, as a precondition for assignment of an intent to use application, that there be an ongoing

19  and existing business, or portion thereof, for each of the goods in an intent to use application."

20  2008 WL 4354180, at *7 (TTAB Sept. 19, 2008) (non-precedential).  The TTAB continued: "The

21  statute must allow for the transfer of [an intent-to-use application] claiming a bona fide intention

22  to use the mark for goods which are not yet in production or which may be in the planning stage,

23  and which may represent an extension of an applicant's business."  *Id.*  Thus, the intent-to-use

24  applicant must transfer the application accompanied by "that portion of the business that would

25  have used the mark had there been no transfer."  *Id.*  In *Exel*, the applicant transferred the intent-

26  to-use application for the "Exel" trademark before filing an allegation of use.  At the time of the

27  assignment, the applicant was using Exel in commerce for some, but not all, of the goods listed in

28  
17

the intent-to-use application. *Id.* at *7. The TTAB found that the applicant transferred the mark along with all of the assets of the applicant's business, and it was irrelevant that the mark had not been used for every good in the application. *Id.* at *9. Accordingly, the TTAB found that the assignment fit within § 1060(a)(1). Thus, while *Railrunner* and *Greene* conclude that an "ongoing and existing" business requires the use of the mark in connection with each of the goods or services listed in the intent-to-use application, *Exel* finds that use of the mark in connection with some of the goods or services in the application is sufficient.

In the instant case, Defendant urges the Court to adopt the *Railrunner* interpretation of § 1060(a)(1), and find that Miller had no "ongoing and existing" business to assign because there is no allegation that Miller provided each of the services in the original intent-to-use application. Mot. at 9–10. Plaintiff asks the Court to reject *Railrunner*, and argues that an "ongoing and existing" business does not require any use of the mark in commerce. *See* Opp. at 4. According to Plaintiff, if a mark is in use, an intent-to-use applicant could simply file an allegation of use and assign the mark under § 1060(a)(1) without reference to the "ongoing and existing" business exception. *See* 15 U.S.C. § 1060(a)(1) (permitting assignment of intent-to-use application after an allegation of use is filed, or to the successor of the applicant's "ongoing and existing" business). Thus, Plaintiff argues, requiring use of the mark in commerce would render the "ongoing and existing" business exception superfluous.

The Court need not resolve the conflict in TTAB decisions, or adopt the *Railrunner* interpretation, to conclude that an "ongoing and existing" business to which a mark pertains requires at least some use of the mark in commerce. This is simply another way of stating that the mark must have accrued goodwill before the mark may be validly assigned. "Goodwill" has been generally described as "the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers." *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555 (1993). Goodwill accrues through use of the mark. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th

18

Cir. 2006) (stating that the registration of a mark "does not create a mark or confer ownership; only use in the marketplace can establish a mark"); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1090 (N.D. Cal. 2006) ("Because there is no evidence of any use of the CONVERSAGENT mark . . . there is also a lack of evidence that there was any transferable goodwill associated with the mark."); *Jim Henson Prods. v. John T. Brady & Assocs.*, 867 F. Supp. 175, 182–83 (S.D.N.Y. 1994) (explaining that prior to actual use there is no assignable interest in a trademark).  Thus, without any use of a mark, there is no goodwill to assign.  *See Conversive, Inc.*, 433 F. Supp. 2d at 1090; *see also* 3 McCarthy on Trademarks and Unfair Competition § 18:13 (stating that "one who merely has an intention to use a mark in a business not yet established really has no 'trademark' to sell" because "[t]here is as yet no good will represented by the mark").

Further, requiring some use of a mark before the assignment of an intent-to-use application is consistent with the legislative history of the "ongoing and existing" business exception to § 1060(a)(1).  The TTAB has repeatedly highlighted Congress's concern that "[p]ermitting assignment of applications before a mark is used would conflict with the principle that a mark may be validly assigned only with some of the business or goodwill attached to use of the mark and would encourage trafficking in marks."  *Clorox Co.*, 40 U.S.P.Q.2d at 1105 (quoting S.1883, 100th Cong., 1st Sess., 133 Cong. Rec. S16552 (daily ed. Nov. 19, 1987), *reprinted in* United States Trademark Association, Trademark Law Revision Act of 1988 122 (1989)).  In other words, "[t]he purpose of this limitation on assignment of an application is to prohibit 'trafficking' in marks: the buying and selling of 'inchoate' marks which as of yet have no real existence."  *Exel*, 2008 WL 4354180, at *7 (quoting 3 McCarthy on Trademarks and Unfair Competition § 18:13) (ellipsis omitted); *see also Pfizer, Inc. v. Hamerschlag*, 2001 WL 1182865, at *4 (TTAB Sept. 27, 2001) (non-precedential) ("Unwittingly or not, a party who has no business except obtaining a trademark on the basis of intent to use and who prior to starting a business assigns that application to another falls squarely into the trademark trafficking activity that [§ 1060(a)(1)] is intended to preclude.").

United States District Court
Northern District of California

In the instant case, the assignment purports to transfer "[Miller's] entire right title and interests in and to the trademarks identified in Schedule A attached hereto (the "Marks"), together with that part of [Miller's] business to which the Marks pertain, which business is ongoing and existing, the goodwill of the business symbolized by the Marks, and all registrations and applications therefor."  FAC Ex. C.  Defendant does not argue that this assignment was insufficient to transfer the goodwill and ongoing and existing business of Miller.  Rather, Defendant argues that the assignment is invalid because Miller had no goodwill or ongoing and existing business to transfer.  Although the Court accepts the allegations in the FAC as true for the purposes of a motion to dismiss, the Court need not accept as true allegations that are conclusory legal conclusions.  *See Adams*, 355 F.3d at 1183.  The language in the assignment merely reflects the language of § 1060(a)(1).  *See* FAC Ex. C.  Standing alone, the assignment's language does not establish that Miller had goodwill or an ongoing and existing business to transfer.  *See Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2013) ("[A] mere recitation in the assignment agreement that the mark was assigned 'together with the good will of the business symbolized by the mark' is not sufficient to establish a valid transfer." (internal quotation marks omitted)); *Creative Arts*, 2012 WL 6732907, at *6 ("The language of the assignment does not control whether Mrs. Calloway's activities were actually organized as an 'ongoing or existing business,' thus rendering the assignment of the application valid.").  Accordingly, the Court looks to the FAC to determine whether Plaintiff offers any factual allegations to support that Miller had goodwill or an ongoing and existing business to assign.

The FAC includes no allegations regarding Miller's pre-assignment business or use of the Muzook Mark.  *See generally* FAC.  For example, the FAC does not allege that Miller provided any services under the Muzook Mark; invested money in the development of the Muzook Mark; publicly displayed the Muzook Mark; had any business assets; or engaged in any business activities.  Instead, the FAC focuses on *Plaintiff's* use of the Muzook Mark, which began in August 2013.  However, allegations of Plaintiff's use—which does not begin for two years after the assignment—do not plausibly allege that *Miller* used the Muzook Mark, prior to the

20

United States District Court
Northern District of California

assignment, in a manner that established goodwill or any ongoing and existing business.  Thus, Plaintiff fails to sufficiently allege that the assignment of the intent-to-use application from Miller transferred goodwill or an ongoing and existing business as required by § 1060(a)(1).  Without a valid assignment, Plaintiff fails to allege that Plaintiff owns a valid registration for the Muzook Mark and is entitled to the constructive-use date established by the registration.

In the opposition, Plaintiff argues that, before the assignment, Miller "created an idea for a business, began business activities to implement the business model including the filing of a patent application that covers his collaborative invention and explicitly mentions the MUZOOK trademark . . . , applied for a trademark based on intent to use and then assigned that application to a business entity which he owned and controlled and which has since carried on such business activities related to the trademark."  Opp. at 8.  First, however, Miller did not apply for the patent until December 19, 2011, *after* the assignment.  Opp. Ex. B.  Accordingly, the patent application can not establish that a business was ongoing and existing before the October 2011 assignment. Additionally, the other activities described in the opposition—creating an idea, applying for an intent-to-use trademark, and assigning the application to an entity that later used the Muzook Mark in commerce—establish only that Miller intended to use the Muzook Mark in a future business. On their face, these allegations do not indicate any use of the Muzook Mark nor the establishment of a business.  *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1158–59 (9th Cir. 2001) ("[T]rademark rights are not conveyed through mere intent to use a mark commercially.").

Plaintiff further points to the Miller declaration attached to the opposition, which states that, "[a]t least as early as April 28, 2011, I personally began to pitch my collaboration services ideas to others attached to the mark MUZOOK."  Opp. Ex. A, ¶ 5.  The declaration also states that, before April 28, 2011, Miller was working with Plaintiff "to develop the subject business to which the trademark relates."  *Id.* ¶ 3.  Plaintiff cites no authority, and makes no argument, that these activities involve any use of the Muzook Mark sufficient to establish goodwill, as required for an "ongoing and existing" business.

Goodwill is established through use of a mark "in a way sufficiently public to identify or

21

distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Dep't of Parks*, 448 F.3d at 1126; *see also Brookfield Commc'ns*, 174 F.3d at 1051 ("The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce . . . ."); 3 McCarthy on Trademarks and Unfair Competition § 18:2 ("A designation that has not been used as a trademark has no good will to symbolize."). While "advertising combined with other non-sales activity" may constitute use of a trademark, *Dep't of Parks*, 448 F.3d at 1126, "mere preparation to use a term as a trademark" is not sufficient, *Brookfield Commc'ns*, 174 F.3d at 1052.  For example, neither putting a mark "on a prototype displayed to a potential buyer" nor engaging in "limited e-mail correspondence with lawyers and a few customers" is sufficient "to establish trademark rights." *Brookfield Commc'ns*, 174 F.3d at 1052.  Moreover, no goodwill is created when the mark "is seen by the consuming public only in very limited quantity." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 1989 WL 159628, at *3 (E.D. Cal. June 19, 1989), *aff'd E. & J. Gallo Winery*, 967 F.2d 1280.

    In the instant case, Miller's declaration states that he "pitch[ed] collaboration services ideas to others" and did unspecified work to "develop" a business.  The declaration does not state that Miller publicly displayed the Muzook Mark, advertised services under the Muzook Mark, or displayed the Muzook Mark to any consumers.  Accordingly, Miller's alleged activities are analogous to "mere preparation" or putting the Muzook Mark "on a prototype displayed to a potential buyer," and do not plausibly allege use of the Muzook Mark "in a way sufficiently public" to identify any services. *See Dep't of Parks*, 448 F.3d at 1126.  Thus, Plaintiff fails to plausibly allege that Miller used the Muzook Mark, or acquired goodwill, before the assignment to Plaintiff. *See Conversive, Inc.*, 433 F. Supp. 2d at 1090 ("Because there is no evidence of any use of the CONVERSAGENT mark . . . there is also a lack of evidence that there was any transferable goodwill associated with the mark."); *see also Creative Arts*, 2012 WL 6732907, at *7–*11 (concluding that an applicant did not have an "ongoing and existing" business to which the mark "Cab Calloway" pertained when the applicant took no steps to market, merchandise, advertise, promote, or sell products bearing the Cab Calloway name, likeness, voice, or caricature; it was

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1   insufficient that the applicant collected royalties, licensed the use of Cab Calloway's image,

2   music, and film clips, and negotiated for the production of a Cab Calloway Broadway musical).

3          Further, Defendant opposed and the Court denied judicial notice of Miller's declaration

4   because the facts in the declaration are subject to reasonable dispute and can not be "accurately

5   and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.

6   Evid. 201(b).  Accordingly, even if Miller were correct that the declaration establishes that Miller

7   had an ongoing and existing business (which the Court does not so hold), it would be improper for

8   the Court to consider the declaration in ruling on the instant motion.  *Adobe Sys. Inc. v. Blue*

9   *Source Grp.*, 2015 WL 5118509, at *13 (N.D. Cal. Aug. 31, 2015).

10         Lastly, Plaintiff relies on *Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, 2010 WL 3377500

11  (S.D.N.Y. Aug. 24, 2010), to argue that an intent-to-use application may be transferred before use

12  so long as (1) the applicant originated the trademark as part of a distinctive trade style; (2) the

13  applicant was the CEO of the assignee; and (3) the assignee used the trademark for the same

14  purposes intended by the applicant at the time of the applicant's trademark application.  *See* Opp.

15  at 7.  The Court is not persuaded by Plaintiff's citation to *Fitzpatrick*.  First, the *Fitzpatrick* court

16  held that "where a trademark is assigned . . . without its accompanying goodwill, the assignment is

17  invalid." *See Fitzpatrick*, 2010 WL 3377500, at *2.  The *Fitzpatrick* court further found that the

18  assignment at issue in the case satisfied § 1060(a)(1) because the trademark had accrued goodwill,

19  which was assigned along with the intent-to-use application.  *See id.* at *3.  In this case, by

20  contrast, Plaintiff provides no factual allegations to support that Miller used the Muzook Mark in

21  commerce or that the Muzook Mark accrued goodwill prior to the assignment.

22         Second, to the extent that Plaintiff argues that, so long as the above three factors are

23  satisfied, *Fitzpatrick* permits an assignment without goodwill or an ongoing and existing business,

24  Plaintiff's argument is inconsistent with § 1060(a)(1) and Ninth Circuit law.  "[T]he law is well

25  settled that there are no rights in a trademark alone" and that a mark is "assignable with the

26  goodwill of the business in which the mark is used, or with that part of the goodwill of the

27  business connected with the use of and symbolized by the mark." *E. & J. Gallo Winery*, 967 F.2d

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    at 1289 (quoting 15 U.S.C. § 1060(a)(1)); *see also Oculu*, 2015 WL 3619204, at *7 ("As a

2    theoretical matter, '[a] trademark exists only in connection with an on-going business.  If the

3    'assignor' has made no trademark use of a designation, then there are no trademark rights to

4    assign.'") (quoting 3 McCarthy on Trademarks and Unfair Competition § 18:6).  Moreover,

5    Plaintiff's argument is inconsistent with the *Fitzpatrick* court's recognition that the assignment of

6    a trademark must include the associated goodwill.  *Fitzpatrick*, 2010 WL 3377500, at *2.

7            Miller chose to conduct business through the creation of a separate corporate entity, which,

8    like Miller, counts as a "person" under the Lanham Act.  15 U.S.C. § 1127.  Miller maintained

9    Plaintiff as a separate corporation, and Miller, not Plaintiff, filed the intent-to-use application for

10   the Muzook Mark.  In an analogous situation, the TTAB found that the assignment of a mark from

11   a subsidiary corporation to the parent corporation without any of the subsidiary's "ongoing and

12   existing" business violated § 1060(a)(1).  As the TTAB explained, "Such a business structure may

13   offer some advantages, but it also comes with some strictures, and the existence of a corporation

14   cannot be turned on or off at will to suit the occasion.  This result is merely the flip side of the

15   principle that a parent corporation is not liable for the wrongs of its subsidiary absent disregard of

16   corporate separateness, such as an 'alter ego' relationship." *See Central Garden*, 108 U.S.P.Q.2D

17   at 1149.  Similarly, the Court here "cannot ignore the fact that the intent-to-use application was

18   transferred from one entity to another in a transaction that did not satisfy the requirements of the

19   statute." *Id.*  While the assignment from Miller to Plaintiff "might not seem to amount to what we

20   commonly think of as 'trafficking'" in a mark, "Congress saw fit to protect against trafficking by a

21   bright line rule not admitting of exceptions, and that rule allows a transferor to establish her *bona*

22   *fides* only one way: by transferring the [intent-to-use] application along with an ongoing

23   business." *Creative Arts*, 2012 WL 6732907, at *5.  Plaintiff fails to allege that Miller assigned

24   such an ongoing business along with the intent-to-use application for the Muzook Mark.  In sum,

25   Plaintiff has not pled sufficient facts to plausibly allege that the October 1, 2011 assignment of the

26   Muzook Mark complied with § 1060(a)(1).

27            As discussed in the above procedural history section, on March 10, 2016, Plaintiff filed a

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

second assignment of the Muzook Mark from Miller to Plaintiff, dated December 7, 2015. Plaintiff failed to attach this exhibit to the FAC. The FAC alleged that the October 1, 2011 assignment "was confirmed on December 7, 2015 in an assignment specifically conveying Reg. No. 4,419,977," and cited "Exhibits C–D." FAC ¶ 15. The FAC provided no other details of the December 7, 2015 assignment. However, both Exhibits C and D, attached to the FAC, are the October 1, 2011 assignment. *See* FAC Exs. C–D. On March 10, 2016, Plaintiff filed the December 7, 2015 assignment as a "Correction of Docket" for Exhibit D. ECF No. 84. Although Plaintiff did not correct the docket for almost two months after the completion of briefing on the instant motion, Plaintiff provided no explanation for the delay. *See id.*

Although the December 7, 2015 assignment was not raised by Plaintiff in opposition to the instant motion or properly attached to the FAC, the Court nonetheless address it. In addition to "confirm[ing]" the October 1, 2011 assignment, the December 7, 2015 assignment assigned the Muzook Mark from Miller to Plaintiff "[t]o the extent that any rights related to the Mark were not transferred by the October 1, 2011 assignment." *Id.* The Court concludes that, under the circumstances, the December 2015 assignment does not grant Plaintiff priority under the Lanham Act. If the October 1, 2011 assignment is invalid under § 1060(a)(1), the intent-to-use application and resulting Muzook Mark registration are void. *Oculu*, 2015 WL 3619204, at *7 (citing *Clorox*, 40 U.S.P.Q.2d at 1104). Because Plaintiff fails to sufficiently plead that the October 1, 2011 assignment complied with § 1060(a)(1), Plaintiff does not sufficiently plead there were "any rights related to the Mark" available to assign in December 2015.

Accordingly, Plaintiff has not plausibly alleged that Plaintiff received the Muzook Mark in a valid assignment, or that Plaintiff is entitled to rely on the constructive-use date provided by the Muzook Mark registration. Given that Plaintiff has not pled priority based upon actual use of the Muzook Mark, Plaintiff fails to allege any type of priority over Defendant. The Court thus GRANTS Defendant's motion to dismiss Plaintiff's Lanham Act claim. *See Brookfield Commc'ns*, 174 F.3d at 1047 (noting that, to state a claim of unfair competition under the Lanham Act, plaintiff must allege ownership of a trademark).

25

### C. Failure to State a Claim for "Statutory and Common Law Unfair Competition"

Plaintiff also asserts, in "Count One," claims for "statutory and common law unfair competition."  Plaintiff does not identify the statute that Defendant allegedly violated.  *See generally* FAC; Opp.  However, in the FAC, Plaintiff alleges that Defendant committed an "unlawful, unfair and/or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  FAC ¶ 38.  This tracks the language of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Accordingly, the Court construes Plaintiff's claim for "statutory . . . unfair competition" as a claim under the UCL.  The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  "The UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad."  *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 589760, at *17 (N.D. Cal. Feb. 14, 2016).

Similarly, neither the FAC nor Plaintiff's opposition discusses Plaintiff's claim for "common law unfair competition."  In the prior motion to dismiss, the Court found that Plaintiff failed to state a plausible claim for relief because "the Court cannot determine what claim Plaintiff alleges."  ECF No. 64 at 17–18.  Even after this guidance, however, Plaintiff does not identify the legal basis or elements of the common law unfair competition claim, cite any relevant cases, or explain which state's common law the Court should apply.  Defendant assumes that Plaintiff intends to state a claim for unfair competition under California common law, *see* Mot. at 7, which Plaintiff does not dispute, *see generally* Opp.

The Court agrees that it is appropriate to apply California law to Plaintiff's claim.  Federal courts must apply the forum state's choice of law rules when dealing with common law claims over which they have supplemental jurisdiction.  *Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1201 (C.D. Cal. 2014) (citing *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983)).  "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.  In such event [that party] must demonstrate that the latter rule

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   of decision will further the interest of the foreign state and therefore that it is an appropriate one

2   for the forum to apply to the case before it." *Am. Marine Corp. v. Blue Shield of Cal.*, 2011 WL

3   1399244, at *3 (N.D. Cal. Apr. 13, 2011) (quoting *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th

4   906, 919 (2001).  In the instant case, no party has invoked foreign law.  Moreover, California "has

5   a strong interest in protecting its citizens from trademark infringement and consumer

6   confusion." *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154 (C.D. Cal. 2000).

7   Further, Plaintiff's UCL and common law trademark infringement claims arise under California

8   law.  *See Am. Marine Corp.*, 2011 WL 1399244, at *4 ("[I]t is unclear why [foreign] law should

9   apply to the second amended complaint when that complaint was filed in our district court in the

10  Northern District of California, is devoid of any mention of [foreign] law, and instead asserts one

11  of its claims under the California Business and Professions Code.").  Under California law, the tort

12  of unfair competition is violated when a defendant "pass[es] off their goods as those of another

13  [or] . . . exploit[s] trade names or trademarks." *See Sybersound Records, Inc. v. UAV Corp.*, 517

14  F.3d 1137, 1153 (9th Cir. 2008)

15      Defendant asserts that Plaintiff's "statutory and common law unfair competition claims"

16  should be considered according to the same standard as Plaintiff's claims for common law

17  trademark infringement and Lanham Act unfair competition.  *See* Mot. at 7.  Plaintiff does not

18  respond to this assertion, or separately discuss Plaintiff's UCL and common law unfair

19  competition claims.

20      The Ninth Circuit "has consistently held that state common law claims of unfair

21  competition and actions pursuant to California Business and Professions Code § 17200 are

22  'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d

23  1255, 1263–64 (9th Cir. 1995); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1106 (N.D. Cal.

24  Mar. 28, 2003) (noting that the Court's analysis of plaintiff's Lanham Act claims is determinative

25  of plaintiff's UCL claims).  Here, Plaintiff's UCL and common law unfair competition claims are

26  premised on the same alleged conduct that underlies Plaintiff's claims for common law trademark

27  infringement and Lanham Act unfair competition.  Specifically, Plaintiff alleges that Defendant

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

violated the UCL and committed common law unfair competition because Defendant "misappropriated Plaintiff's goodwill associated with the [Muzook] Mark, using the Infringing Designation 'MUZOOKA' for Defendant's own competitive advantage."  FAC ¶ 36.  Plaintiff further alleges that Defendant is "willfully planning to misappropriate and/or is misappropriating Plaintiff's Mark for Defendant's own commercial advantage."  *Id.* ¶ 37.  Accordingly, for the same reasons that the Court dismisses Plaintiff's claims for common law trademark infringement and Lanham Act unfair competition, the Court GRANTS Defendant's motion to dismiss Plaintiff's UCL and common law unfair competition claims.  *See Cleary*, 30 F.3d at 1263–64 (noting that state common law claims of unfair competition and actions pursuant to the UCL are "substantially congruent" to claims made under the Lanham Act, and considering all claims together).

### D.  Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez*, 203 F.3d at 1127 (alterations omitted).  The Court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *See Leadsinger*, 512 F.3d at 532.

In the instant case, the Court previously dismissed Plaintiff's common law trademark infringement and Lanham Act unfair competition claims because Plaintiff failed to sufficiently allege an ownership interest in the Muzook Mark.  The Court also dismissed Plaintiff's unfair competition claim for failing to state the basis for the claim, and thus failing to plausibly allege a violation by Defendant.  The Court's order stated that "failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's claims."  ECF No. 64 at 19.

Plaintiff has failed to cure the deficiencies identified in the prior order, as Plaintiff still fails to sufficiently allege an ownership interest in the Muzook Mark.  Although the Court did not previously rule on the validity of the assignment under § 1060(a)(1), that is because Plaintiff failed

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

to provide the assignment, or the language or circumstances of the assignment, in the original complaint or in Plaintiff's opposition to the first motion to dismiss.  *See* ECF No. 1.  Further, after reviewing Defendant's arguments on the instant motion, Plaintiff submitted a declaration of Miller, and on March 10, 2015, Plaintiff filed the December 7, 2015 assignment.  Neither of these documents cures the deficiencies in Plaintiff's allegations of ownership.  Accordingly, the Court concludes that permitting further amendment would be futile, would cause undue delay, and would unduly prejudice Defendant.  The Court grants Defendant's motion to dismiss with prejudice.  *See Leadsinger*, 512 F.3d at 532.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated:  March 14, 2016

_____
LUCY H. KOH
United States District Judge

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California