1
2
3
4
5
6
7

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEBASTIAN BROWN PRODUCTIONS LLC, | Case No. 15-CV-01720-LHK |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE** |
| v. | Re: Dkt. No. 108 |
| MUZOOKA INC., et al., | |
| Defendants. | |

Plaintiff Sebastian Brown Productions, LLC ("Plaintiff") sues Defendant Muzooka, Inc. ("Muzooka" or "Defendant") for unfair competition and trademark infringement under federal and state law.  ECF No. 107 (Second Amended Complaint, or "SAC").  Before the Court is Defendant's motion for judgment on the pleadings.  ECF No. 108 ("Def. Mot.").  As discussed below, the Court construes this motion as a motion to dismiss.  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for resolution without oral argument and VACATES the hearing set on October 13, 2016.  The October 13, 2016 Case Management Conference at 1:30 p.m. remains set.  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to dismiss with prejudice.

1

# I. BACKGROUND

## A. Factual Background

### 1. Plaintiff's Business and Trademark

Plaintiff is a California limited liability company headquartered in Livermore, California. SAC ¶ 1. Plaintiff owns and operates the digital media storefront MuZook at muzook.com. *Id.* Plaintiff aims to create "a new and unique art form in multi-media books, multi-media audio, and/or audiovisual works," including e-books, multi-media songs, short films, music videos, and animated short and feature films together with streaming live or recorded audio and video. *Id.* ¶ 8. Through MuZook, Plaintiff advertises and sells downloadable music, videos, and books. *Id.* ¶ 9. MuZook "also offers collaboration services to the Artist Community to help members to collaborate with others to make literature, music, video, movies, soundtracks, e-books, concerts and other forms of entertainment." *Id.* ¶ 10. Plaintiff plans to sell the multimedia produced by the artists' collaboration program "on muzook.com for use in connection with its Zook App Reader," which is "currently under development." *Id.* ¶ 7. Plaintiff also has a downloadable e-book available for purchase on Apple's iTunes store. SAC ¶ 17 & Ex. F.

On September 12, 2011, Plaintiff's sole owner, the individual J. Michael Miller ("Miller"), filed for the "Muzook Mark" under an "intent-to-use" application. SAC ¶ 11 & Ex. G. An intent-to-use application permits an applicant with a bona fide intention to use a mark to effectively reserve the mark and establish a constructive priority date before the mark is actually used in commerce. 15 U.S.C. §§ 1051(b), 1057(c). To complete registration of the mark, an intent-to-use applicant must file an allegation of use indicating that the mark has been used in commerce. *Id.* § 1051(b)–(d). Miller's intent-to-use application sought to register the Muzook Mark for, among other similar services, "collaboration services delivered over the Internet and/or over another publicly accessible network; collaboration services for enabling persons such as writers, musical artists and illustrators to collaborate with each other over a publicly accessible network; collaboration services for enabling persons such as writers, musical artists and illustrators to collaborate with each other to create works incorporating multiple media elements such as

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

narrative textual content, music and illustrations in works of fiction and non-fiction." SAC ¶ 11.

On October 1, 2011, Miller assigned to Plaintiff "[Miller's] entire right, title and interests in and to the" Muzook Mark intent-to-use application. *Id.* Exs. C & D.

On August 30, 2013, the U.S. Patent and Trademark Office ("PTO") granted a request to divide Plaintiff's intent-to-use application into a "parent" application and a "child" application. *Id.* ¶ 16.  The "parent" application, serial number 85/420,834, sought to register the Muzook Mark for a broad range of collaboration services for which Plaintiff did not claim Muzook was in use. *Id.*; ECF No. 109 (Request for Judicial Notice, or "RJN") Ex. B.[1]  The "child" application, by contrast, sought to register the Muzook Mark for a narrower range of services for which Plaintiff did claim the mark was in use. SAC ¶ 16; RJN Ex. B.  Specifically, the child application sought to register the Muzook Mark for "collaboration services, namely, telecommunication access services which allow parties to view, adapt, and share materials such as narrative textual content, music and illustrations in works of fiction and non-fiction to enable persons such as writers, musical artists and illustrators to collaborate with each other within or across disciplines to compare work over a publicly accessible network to compose e-books and works incorporating multiple media elements such as narrative textual content, music and illustrations in works of fiction and non-fiction for electronic devices such as smartphones, computers, e-readers, touchscreen computers, and tablets." RJN Ex. B.

Based on a statement of use filed on August 21, 2013, RJN Ex. B, the child application matured in to U.S. Trademark Registration Number 4,419,977 on October 15, 2013,  SAC Ex. B.  The first use in commerce of the Muzook Mark was recorded as August 14, 2013.  *Id.*  Plaintiff

---

[1] Defendant requests judicial notice of documents from the PTO's Trademark Status and Document Retrieval Database and the registration certificate for the Muzooka Mark.  *See* RJN. Plaintiff does not oppose this request.  These documents are matters of public record and the proper subjects of judicial notice.  *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record." (internal quotation marks omitted)).  The Court accordingly GRANTS Defendant's request.

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

has used the mark for its collaboration services, in addition to using the mark "in connection with offering products for sale, namely, works incorporating multiple media elements such as narrative textual content and illustrations in works of fiction and non-fiction for electronic devices such as computers." SAC ¶ 17. By contrast, Plaintiff never filed a statement of use for the parent application and that application is now abandoned. *See* 15 U.S.C. § 1051(d) (limiting time to file a statement of use).[2]

### 2. Defendant's Business and Trademark

Defendant, a Delaware corporation, operates a "Muzooka" website and offers a Muzooka mobile application. SAC ¶¶ 2, 20. Defendant's website and application allows "users to stream audio works in the form of music playlists or individual tracks from participating artists and offers 'interactive capabilities' for sharing one's listening activity through social media." *Id.* ¶ 20. Users can also purchase select tracks and view artist biographies. *Id.* Defendant maintains a "Muzooka" Twitter, Facebook, and Tumblr account. *Id.* ¶ 22. Plaintiff alleges that Defendant infringes Plaintiff's Muzook Mark through use of the confusingly similar "Muzooka" trademark. *Id.* ¶ 21.

Defendant filed for the "Muzooka" trademark on December 19, 2011. *Id.* Ex. O; RJN Ex. E. The USPTO registered the Muzooka Mark on December 10, 2013. RJN Ex. E. The Muzooka Mark is registered for, among other services, "computer software for use in the delivery, distribution, and transmission of digital music and entertainment-related audio, video, text and multimedia content; computer software for enabling transmission, storage, sharing, collection, editing, organizing and modifying audio, video, messages, images, and other data, including for

---

[2] Plaintiff's SAC alleges that Plaintiff "is the owner of a pending trademark application" for the broader range of parent-application services. SAC ¶ 11. Defendant asserts that, because the parent application has now been abandoned by Plaintiff, Plaintiff's inclusion of this allegation is an attempt by Plaintiff to "willfully misle[a]d the Court in a deliberate attempt to bolster its rights in the MUZOOK trademark." Def. Mot. at 4. Defendant asserts that this "egregious" conduct warrants dismissal of Plaintiff's SAC and judgment in favor of Defendant. *Id.* at 19.
     Plaintiff responds that it included the allegation inadvertently. ECF No. 129 ("Pl. Resp."), at 18. According to Plaintiff, the statement "was accurate at the time it was first alleged but was later inadvertently carried over from the original complaint." *Id.* The Court takes Plaintiff at its word that the inclusion was inadvertent. The Court does not consider the allegation in considering Plaintiff's complaint. As discussed above, Plaintiff's parent application has been abandoned because no statement of use has been filed. 15 U.S.C. § 1051(d)(2).

4

United States District Court
Northern District of California

use in social networking and online chats for use in creating social networking databases and for use in social networking database management." *Id.* According to the registration, the Muzooka Mark was first used in commerce in December 2011. *Id.*

**B. Procedural History**

On January 6, 2014, Plaintiff filed suit in the U.S. District Court for the District of Delaware against Muzooka; Muzooka's corporate predecessor Ivory Octaves, LLC; and Muzooka co-founders Shawn Wilson and Chester Aldrige. ECF No. 1, at ¶¶ 1–5. Plaintiff asserted three causes of action against each defendant: (1) unfair competition (without specifying whether the cause of action arose under a statute or the common law); (2) infringement of common law trademark rights; and (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). *Id.* ¶¶ 39–54. On March 30, 2015, the Delaware district court concluded that it lacked personal jurisdiction over the individual defendants and transferred the case to the U.S. District Court for the Northern District of California. ECF Nos. 26 & 27.

This case arrived in the Northern District of California on April 16, 2015. ECF No. 28. On July 6, 2015, Defendants filed a motion to dismiss. ECF No. 37. Plaintiff opposed the motion on July 20, 2015, ECF No. 45, and Defendants replied on July 27, 2015, ECF No. 46. This Court granted in part and denied in part Defendant's motion to dismiss on November 11, 2015. *Sebastian Brown Prods., LLC v. Muzooka Inc.*, 143 F. Supp. 3d 1026, 1031 (N.D. Cal. 2015), ECF No. 64. As relevant to the instant motion, the Court concluded that Plaintiff failed to state a common law trademark infringement claim and a Lanham Act claim because Plaintiff insufficiently alleged an ownership interest in the Muzook Mark. *Id.* at 1041. Specifically, Plaintiff failed to provide any information regarding the assignment of the Muzook Mark from Miller to Plaintiff, and the PTO listed Miller—not Plaintiff—as the owner of the registered mark. *Id.* at 1040. The Court thus dismissed, with leave to amend, Plaintiff's common law trademark infringement and Lanham Act unfair competition claims. *Id.* at 1041. The Court also dismissed, with leave to amend, Plaintiff's unspecified unfair competition claim. *Id.*

On December 11, 2015, Plaintiff filed the First Amended Complaint, which included the

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

assignment of the Muzook Mark from Miller to Plaintiff.  ECF No. 65 (First Amended Complaint, or "FAC").  Plaintiff's FAC asserted three claims against only Muzooka:  (1) "statutory and common law unfair competition"; (2) infringement of common law trademark rights; and (3) unfair competition under the Lanham Act, 15 U.S.C. 1125.  *Id.* ¶¶ 35–50.  On December 29, 2015, Defendant filed a motion to dismiss and, in the alternative, for judgment on the pleadings.  ECF No. 68.  On that same day, Defendant answered the FAC and filed a counterclaim, ECF No. 70, which Plaintiff opposed, ECF No. 71.  Defendants filed a reply on January 19, 2016.  ECF No. 74.

The Court construed Defendant's motion as a motion to dismiss and granted the motion with prejudice on March 14, 2016.  *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 949004, at *1 (N.D. Cal. March 14, 2016) ("*Muzooka II*"), ECF No. 86.  First, this Court dismissed Plaintiff's common law trademark infringement claim because Plaintiff's allegations in the FAC were "facially insufficient to plead an actual use in commerce before December 2011," the date of Defendant's first use of the Muzooka Mark in commerce.  *Id.* at *7.

Second, the Court dismissed Plaintiff's Lanham Act claim because Plaintiff's complaint failed to sufficiently allege priority over Defendant through constructive use of the Muzook Mark.  *Id.* at *14.  Specifically, the Court held that Plaintiff failed to allege that the assignment of the Muzook Mark complied with 15 U.S.C. § 1060(a)(1), which limits the assignment of an intent-to-use application to situations where the intent-to-use application is transferred with both the goodwill accrued by the mark and the "ongoing and existing business associated with the mark."  *Id* at *9–11, 14.  Plaintiff's FAC "include[d] no allegations regarding Miller's pre-assignment business or use of the Muzook Mark," and thus the FAC failed to sufficiently allege that the mark developed goodwill prior to Miller's assignment to Plaintiff.  *Id.* at *12.

Finally, for the same reasons that the Court dismissed the FAC's first two claims, the Court dismissed with prejudice Plaintiff's California statutory and common law unfair competition claims.  *Id.* at *14–15.

On April 8, 2016, Plaintiff filed a motion for leave to file a motion for reconsideration of

6

Plaintiff's claim under the Lanham Act.  ECF No. 92 (motion); ECF No. 93 (memorandum in support).  Plaintiff argued that the Court misinterpreted the requirements to transfer an intent-to-use trademark application, as set forth in 15 U.S.C. § 1061(a)(1).  ECF No. 93, at 10–14.  Further, Plaintiff asserted that, because the Court interpreted the requirements of § 1060(a)(1) as a matter of first impression in *Muzooka II*, Plaintiff was not aware of the relevance of several facts at the time of the prior motion to dismiss.  *Id.* at 1.  Plaintiff thus sought a reconsideration of the denial of leave to amend Plaintiff's Lanham Act claim.  *Id.* at 14–15.

On July 5, 2016, this Court granted Plaintiff's motion for leave to file a motion for reconsideration and granted reconsideration to allow Plaintiff to allege new facts in support of its Lanham Act claim.  ECF No. 99.  The Court held that Plaintiff failed to demonstrate that reconsideration of the Court's interpretation of § 1060(a)(1) was warranted.  *Id.* at 4.  However, the Court agreed with Plaintiff that "Plaintiff has shown a material difference in fact from that presented on the motion to dismiss" and "that, at the time of the motion to dismiss, neither the Ninth Circuit nor any district court within the Ninth Circuit had interpreted the legal requirements of § 1060(a)(1)."  *Id.* at 5–6.  Accordingly, the Court granted reconsideration, vacated "the portion of its earlier order denying leave to amend as to Plaintiff's Lanham Act claim," and dismissed "Plaintiff's Lanham Act claim with leave to amend."  *Id.* at 6.  The Court ordered Plaintiff to "file a Second Amended Complaint alleging a Lanham Act claim with Plaintiff's newly presented facts."  *Id.*

On July 25, 2016, Plaintiff filed a Second Amended Complaint, again asserting claims for common law trademark infringement; unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and unspecified statutory and common law unfair competition.  SAC ¶¶ 66–82.  Plaintiff's SAC included new factual allegations regarding Miller's pre-assignment activities, such as discussing the MuZook project in email exchanges with various professionals, "referring people to Miller's forthcoming MuZook.com website," and setting up Skype recording sessions with musicians.  *Id.* ¶¶ 11–27.  Plaintiff attached to its complaint a declaration and several exhibits.  *See id.* Ex. Q.

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    On August 8, 2016, Defendant filed a motion for judgment on the pleadings and a request

2  for judicial notice.  *See* Def. Mot. & RJN.  The following day, on August 9, 2016, Defendant filed

3  an answer to the SAC and counterclaims.  ECF No. 110.  Plaintiff filed an answer to the

4  counterclaims on September 9, 2016, ECF No. 128, and filed a response to Defendant's motion for

5  judgment on the pleadings on September 12, 2016, Pl. Resp.  On September 26, 2016, Defendant's

6  filed a reply.  ECF No. 130.

7    **II. LEGAL STANDARD**

8    Defendant characterizes the instant motion as a motion for judgment on the pleadings.  A

9  motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper

10  "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The

11  Ninth Circuit has held that "the pleadings are closed for the purposes of Rule 12(c) once a

12  complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made."

13  *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005).

14    As discussed above, Defendant filed the instant motion on August 8, 2016.  Def. Mot. at 1.

15  Defendant filed an answer to the SAC and counterclaims on August 9, 2016.  ECF No. 110.

16  Plaintiff filed an answer to Defendant's counterclaims on September 9, 2016.  ECF No. 128.

17  Thus, at the time that Defendant filed the instant motion, the pleadings were not "closed."

18  Defendant's motion for judgment on the pleadings is accordingly untimely.  *See Doe*, 419 F.3d at

19  1061 (finding a plaintiff's motion for judgment on the pleadings premature because the plaintiff

20  filed the motion prior to a defendant's answer).

21    Nonetheless, the Court will construe Defendant's premature motion for judgment on the

22  pleadings as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

23  Procedure.  Indeed, this Court construed Defendant's prior motion as a motion to dismiss because

24  it was filed prior to the close of pleadings, *Muzooka II*, 2016 WL 949004, at *4, and other district

25  courts within the Ninth Circuit have similarly construed premature Rule 12(c) motions as motions

26  to dismiss under Rule 12(b)(6), *see, e.g.*, *Baiul v. NBC Sports*, No. CV-15-05163-DDP, 2016 WL

27  5842189, at *2 n.4 (C.D. Cal. Oct. 5, 2016) ("Where, as here, a motion is brought prematurely

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   under Rule 12(c), courts may treat the motion as a motion to dismiss pursuant to Rule 12(b)(6).");

2   *KFD Enterprises, Inc. v. City of Eureko*, No. C-08-4571-MMC, 2010 WL 1661822, at *3 (N.D.

3   Cal. April 22, 2010) (construing premature motion for judgment on the pleadings as a motion to

4   dismiss because the two motions are "subject to the same analysis").  A motion to dismiss

5   pursuant to Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed."

6   Fed. R. Civ. P. 12(b)(6).  Here, as explained above, Defendant filed its motion for judgment on the

7   pleadings prior to filings its answer to Plaintiff's SAC and counterclaims.  Accordingly,

8   Defendant's motion is timely as a motion to dismiss.  Moreover, as the Court explained in

9   *Muzooka II*, a motion to dismiss pursuant to Rule 12(b)(6) and a motion for judgment on the

10  pleadings pursuant to Rule 12(c) are "'functionally identical.'"  *Muzooka II*, 2016 WL 949004, at

11  *4 (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  Both

12  motions test the legal sufficiency of the plaintiff's complaint and "the same standard of review"

13  applies.  *Dworkin*, 867 F.2d at 1192.

14        For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

15  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

16  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The

17  Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

18  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's

19  complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

20  for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the

21  Court "assume the truth of legal conclusions merely because they are cast in the form of factual

22  allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curium).  Mere

23  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

24  dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

25        **III. DISCUSSION**

26        **A. Failure to State a Claim for Unfair Competition Under the Lanham Act**

27        The Court granted reconsideration of its prior order to allow Plaintiff to allege facts

28

United States District Court
Northern District of California

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

sufficient to state a claim for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).  ECF No. 99, at 6.  A claim for unfair competition under the Lanham Act requires Plaintiff to allege: (1) a protectable ownership interest in a mark, and (2) the likelihood of the infringing mark being confused with the plaintiff's mark.  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999).  The Court dismissed Plaintiff's Lanham Act claim in *Muzooka II* because Plaintiff failed to allege an ownership interest in the Muzook Mark.  *See Muzooka II*, 2016 WL 949004, at *4.  Defendant's instant motion asserts that Plaintiff's SAC also fails to allege a valid ownership interest.

An ownership interest in a mark is demonstrated through priority of use.  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.").  Use of a mark "typically occurs when a mark is used in conjunction with the actual sale of goods or services" and "creates an association among consumers between the mark and the mark's owner."  *Brookfield Commc'ns*, 174 F.3d at 1051 ("The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce . . . .").  "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."  *Id.* at 1047.

In addition to demonstrating priority-of-use through actual use of a mark in commerce, a plaintiff bringing a claim under the Lanham Act may also establish priority through constructive use of a mark.  *See* 15 U.S.C. § 1057(c).  Specifically, federal registration of a mark is "prima facie evidence of [the registrant's] ownership of the mark[]," *see Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006), and once a mark is registered, the registrant is granted constructive use of the mark dating back to the filing date of an intent-to-use application.  *See Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3 (9th Cir. 2010) (describing how a registrant receives a constructive-use date after a registrant's intent-to-use application becomes a registered mark).

Defendant first used the Muzooka Mark in commerce in December 2011.  *See* RJN Ex. E.

10

1    Accordingly, in order to establish priority of use, and thus establish an ownership interest in the

2    mark, Plaintiff must plausibly allege facts to establish that Plaintiff used the Muzook Mark in

3    commerce prior to December 2011.  *See Brookfield Commc'ns*, 174 F.3d at 1051.  Miller filed an

4    intent-to-use application for the Muzook Mark on September 12, 2011.  SAC Ex. G.  Soon

5    thereafter, on October 1, 2011, Miller assigned the intent-to-use application to Plaintiff.  SAC Ex.

6    D.  Thus, if Miller's assignment of the intent-to-use application to Plaintiff is a valid assignment,

7    Plaintiff can allege a constructive-use date of September 12, 2011.

8          Unfortunately for Plaintiff, as the Court explained in *Muzooka II*, "an intent-to-use

9    application is not freely assignable."  *Muzooka II*, 2016 WL 949004, at *8 (citing 15 U.S.C. §

10   1060(a)(1)).  To the contrary, 15 U.S.C. § 1060(a)(1), which governs the assignment of intent-to-

11   use applications, provides the following:

12         A registered mark or a mark for which an application to register has been filed shall
           be assignable with the good will of the business in which the mark is used, or with
13         that part of the good will of the business connected with the use of and symbolized
           by the mark.   Notwithstanding the preceding sentence, no [intent-to-use
14         application] shall be assignable prior to the filing of an amendment under section
           1051(c) of this title to bring the application into conformity with section 1051(a) of
15         this title or the filing of the verified statement of use under section 1051(d) of this
           title, except for an assignment to a successor to the business of the applicant, or
16         portion thereof, to which the mark pertains, if that business is ongoing and existing.

17   15 U.S.C. § 1060(a)(1).

18         Put simply, § 1060(a)(1) states that an applicant may assign an intent-to-use application in

19
     only two circumstances:  (1) after the applicant has filed an allegation of use; or (2) if the
20
     application is transferred "to a successor to the business of the applicant, or portion thereof, to
21
     which the mark pertains, if that business is ongoing and existing."  *Id.*  This rule is intended to
22
     "prohibit 'trafficking' in marks: the buying and selling of 'inchoate' marks which as yet have no
23
     real existence."  3 McCarthy on Trademarks and Unfair Competition § 18:13 (4th ed.).  "Violating
24
     this 'anti-trafficking rule' voids the assignment as well as the underlying application and resulting
25
     registration."  *Oculu, LLC v. Oculus VR, Inc.*, No. SACV-14-0196-DOC, 2015 WL 3619204, at *7
26
     (C.D. Cal. June 8, 2015); *see also Muzooka II*, 2016 WL 949004, at *8, 11 (explaining the anti-
27

28
                                                    11
     Case No. 15-CV-01720-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    trafficking purpose of § 1060(a)(1)).

2         Here, no statement of use was filed for the Muzook Mark until August 21, 2013, RJN Ex.

3    C, almost two years after Miller assigned the mark to Plaintiff, SAC Ex. D.  Section 1060(a)(1)'s

4    first circumstance for assigning an intent-to-use application accordingly does not apply.  Thus, for

5    the assignment to be valid, Plaintiff must allege facts that demonstrate that Miller assigned his

6    intent-to-use application pursuant to the second circumstance: "to a successor to the business of

7    the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and

8    existing." *See* § 1060(a)(1).

9         The Court interpreted the meaning of § 1060(a)(1)'s "ongoing and existing" business

10   requirement in *Muzooka II*, 2016 WL 949004, at *8–11.  After examining the statutory text,

11   relevant case law, and legislative history, the Court "conclude[d] that an 'ongoing and existing'

12   business to which a mark pertains requires at least some use of the mark in commerce." *Id.* at *11.

13   "This is simply another way of stating that the mark must have accrued goodwill before the mark

14   may be validly assigned." *Id.*  In general, goodwill is "the advantage or benefit, which is acquired

15   by an establishment, beyond the mere value of the capital, stock, funds, or property employed

16   therein, in consequence of the general public patronage and encouragement which it receives from

17   constant or habitual customers." *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555

18   (1993).  "Goodwill accrues through use of the mark." *Muzooka II*, 2016 WL 949004, at *11; *see*

19   *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1090 (C.D. Cal. 2006) ("Because

20   there is no evidence of any use of the CONVERSAGENT mark . . . there is also a lack of evidence

21   that there was any transferable goodwill associated with the mark.").  More specifically,

22   "[g]oodwill is established through use of a mark 'in a way sufficiently public to identify or

23   distinguish the marked goods in an appropriate segment of the public mind as those of the adopter

24   of the mark.'" *Muzooka II*, 2016 WL 949004, at *12 (quoting *Dep't of Parks*, 448 F.3d at 1126).

25        Plaintiff alleges new facts in its SAC and contends that these facts establish that Miller

26   sufficiently used the Muzook Mark in commerce prior to assigning the mark to Plaintiff.  *See* Pl.

27   Resp. at 6.  Specifically, Plaintiff's SAC alleges that Miller engaged in several email exchanges

28

12

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   with professionals in 2010 and 2011 in which the Muzook project was discussed; that Plaintiff

2   arranged several Skype recording sessions with musicians in which the musicians performed

3   Miller's music and "endorsed" the Muzook idea; and that Miller attended the San Francisco

4   MusicTech Summit IX in which he "discussed the MuZook project with other attendees." *See id.*

5   at 6–7; SAC ¶¶ 29–46 & Ex. Q.  As discussed further below, these new allegations do not

6   plausibly demonstrate that Miller used the mark "in a way sufficiently public to identify or

7   distinguish the marked goods in an appropriate segment of the public mind." *Dep't of Parks*, 448

8   F.3d at 1126.  To the contrary, the activities that Plaintiff alleges are analogous to uses of a mark

9   that the Ninth Circuit has held insufficient to convey trademark rights.

10       First, the emails that Plaintiff attached as exhibits to the SAC establish only that Miller

11   discussed his "business plan" and "proposal" with individuals in 2010 and 2011, not that Miller

12   used the Muzook Mark in commerce. *See generally* SAC Ex. Q.  Plaintiff attaches six email

13   exchanges to the SAC.

14       The first exchange shows that Miller emailed David McFarland ("McFarland"), Senior

15   Manager of Sales and Marketing for CreateSpace.com, in 2010 and explained his "proposal" and

16   "business plan for the sale of a novel and music in one eBook event." *Id.* Ex. Q-A.  McFarland

17   replied and expressed that the idea was "exciting" but that Miller's idea was "a little ahead of [its]

18   time" in terms of the available technology. *Id.*  The Muzook name does not even appear in these

19   conversations with McFarland. *See id.*

20       In the second attached email, an email that Miller sent to Jeffrey Cohen in April 2011,

21   Miller refers only to his "'Musook' concept." *Id.* Ex. Q-B.

22       The third attached email shows that in April 2011, Steve Knowles ("Knowles") of

23   Marketing Acumen wrote to Miller and explained to Miller the difficulty of "attracting capital" for

24   Miller's "idea," which Knowles described as an "idea with potential." *Id.* Ex. Q-C.

25       The fourth attached email exchange shows that Miller reached out to Virginia Cannon

26   ("Cannon"), a professional at Voyage Air Guitar, to "show [her] [his] project in more detail and

27   discuss any referrals" that Cannon may have. *Id.* Ex. Q-D.  Miller asked Cannon to "keep this

28

side: United States District Court / Northern District of California

13

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  under [her] hat" and referred to a non-disclosure agreement between Miller and Jeff Cohen, the

2  apparent recipient of Miller's April 2011 email.  *Id.*  Miller explained to Cannon that his project

3  was "*going to be* [a] structure for new and existing books that would like to add music

4  soundtracks" to books.  *Id.* (emphasis added).  Cannon wrote to Miller indicating that she had seen

5  his "prototypes and thought that they were very interesting."  *Id.*

6           Similarly, in the fifth attached exchange, Miller wrote an email—labeled as confidential—

7  to Mark Vaz ("Vaz"), asking for Vaz to refer Miller to Vaz's agent because Miller was "launching

8  a new form of 'book with a soundtrack'" and Miller was "positioned to release the first book of

9  this kind."  *Id.* Ex. Q-E.

10          Lastly, in the sixth attached email, Miller wrote to John Oates ("Oates") in September

11  2011 and explained that Muzook did not appear on Miller's website along with Miller's other

12  businesses because the Muzook patent was not yet filed.  *Id.* Ex. Q-F.  Miller further stated that

13  "[r]egarding MuZook, I can forward confidential info to you [i]f you like."  *Id.*

14          These six emails show that Miller reached out and discussed his "business project,"

15  "proposal," and "idea" to individuals in various marketing and creative industries.  The Ninth

16  Circuit has held, however, that trademark rights are not conveyed by an individual's "mere intent

17  to use a mark commercially" or an individual's "mere preparation to use a term as a trademark."

18  *Brookfield Commc'ns*, 174 F.3d at 1052; *see also* 3 McCarthy on Trademarks and Unfair

19  Competition § 16:11 ("Unlike patent law, rights in trademarks are not gained through discovery or

20  invention of the mark, but only through actual usage.").  As the Court explained in *Muzooka II*, the

21  Ninth Circuit has found that "neither putting a mark 'on a prototype displayed to a potential buyer'

22  nor engaging in 'limited e-mail correspondence with lawyers and a few customers' is sufficient."

23  *Muzooka II*, 2016 WL 949004, at *12 (quoting *Brookfield Commc'ns* , 174 F.3d at 1052).

24          Displaying a "prototype" and exchanging "limited e-mail correspondence," *Brookfield*,

25  174 F.3d at 1052, is essentially the activity that Miller's emails evince.  This does not constitute

26  use of a mark that is "sufficiently public to identify or distinguish the marked goods in an

27  appropriate segment of the public mind as those of the adopter of the mark."  *Dep't of Parks*, 448

28

United States District Court
Northern District of California

14

1   F.3d at 1126.  Indeed, the *non*-public and preparatory nature of Miller's correspondence is

2   exemplified by Miller's emails to Vaz and Oates in which he used the term "confidential,"  *see*

3   SAC Ex. Q-E; Ex. Q-F,  and Miller's email to Cannon in which Miller asked Cannon to keep the

4   Muzook idea "under [her] hat" and referred to a non-disclosure agreement between Miller and Jeff

5   Cohen, the apparent recipient of Miller's April 2011 email.  SAC Ex. Q-D.

6          Second, the recording sessions and interviews that Miller arranged with various musicians

7   also fail to establish use of the Muzook Mark in commerce.  Plaintiff asserts that the various

8   musicians that participated in Miller's recording sessions were "potential 'actual consumers' of the

9   [Muzook] service," and that Miller was offering services to these individuals "that were part of the

10  MUZOOK business model:  collaborating with writers and musicians to create a catalog of written

11  and musical works that would be later combined to create a new genre of e-book, one with an

12  embedded musical score."  Pl. Resp. at 7, 10.  However, the allegations in Plaintiff's SAC

13  demonstrate only that Miller arranged recording sessions with a limited group of musicians, that

14  these musicians performed Miller's musical arrangements, and that these musicians "discussed the

15  role" of the Muzook project and "endorse[d]" the Muzook idea.  SAC  ¶¶ 37–38, 44.  There is no

16  allegation that these arrangements were commercial in nature or that the sessions generated any

17  revenue for Muzook.  Again, this is analogous to "mere preparation" to use the Muzook Mark in

18  commerce or "limited" engagement with potential consumers.  *Brookfield Commc'ns*, 174 F.3d at

19  1052.

20         Plaintiff asserts that, even if these recordings were not "sales," they constitute sufficient

21  "marketing and rendering of services" under the Muzook Mark to establish goodwill.  Pl. Resp. at

22  10.  However, even on the assumption that these arrangements were marketing for Muzook or an

23  actual provision of "collaboration" services associated with the Muzook Mark, no goodwill is

24  created when a mark is "seen by the consuming public only in very limited quantity."  *E. & J.*

25  *Gallo Winery v. Gallo Cattle Co.*, 1989 WL 159628, at *3 (E.D. Cal. June 19, 1989), *aff'd E. & J.*

26  *Gallo Winery*, 967 F.2d 1280 (9th Cir. 1992).  "[M]inimal consumer exposure . . . d[oes] not

27  create a brand identity or consumer goodwill."  *Id.*  Although "advertising combined with other

28
                                                    15

1    non-sales activity" may constitute sufficient use of a mark, *Dep't of Parks*, 448 F.3d at 1126, the

2    totality of Plaintiff's allegations do not establish that Miller's pre-assignment activity rose to the

3    level of "sufficiently public" use of the Muzook Mark, *see Brookfield Commc'ns, Inc.*, 174 F.3d at

4    1052.  This is exemplified by the cases upon which Plaintiff relies.  In *Marvel Comics Limited v.*

5    *Defiant*, the district court found that the plaintiff had alleged "sufficiently public" use of a mark

6    where the plaintiff had publicly announced its comic book title "to 13 million comic book readers"

7    and had promoted the title "at the most significant annual convention in the comic book business."

8    837 F. Supp. 546, 548 (S.D.N.Y. 1993) (internal quotation marks omitted).  Similarly, in *New*

9    *West Corporation v. NYM Company of California, Inc.*, New West sent 430,000 individuals a free

10   copy of its magazine prior to the first issue and over 13,800 people responded by subscribing. 595

11   F.2d 1194, 1196 (9th Cir. 1979).   Plaintiff's alleged advertising and non-sales activity is far less

12   extensive than the activity in these cases. *See Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151,

13   1160 & n.4 (9th Cir. 2001) (noting that the "mailing of [] 35,000 post cards, which generated 128

14   responses" but no sales "[p]aled in comparison to the type of advertising . . . [the court] found

15   determinative in *New West*").   Miller's alleged pre-assignment activity is far more similar to the

16   "limited e-mail correspondence with lawyers and a few customers" that the Ninth Circuit has

17   found to be insufficient to establish use of the mark in commerce, rather than the public

18   announcement in *Marvel* or the solicitation mailings in *New West.  See Brookfield*, 174 F.3d at

19   1053.

20          For the same reason, Plaintiff's allegation that Miller "discussed the Muzook project with

21   other attendees" at the San Francisco MusicTech Summit IX is insufficient.  *See* SAC ¶ 46.

22   Plaintiff does not allege that Miller promoted the Muzook Mark at the Summit or that Miller

23   generated any orders or other inquiries from these discussions.  *See Future Domain Corp. v.*

24   *Trantor Sys. Ltd.*, 1993 WL 270522, at *8 (N.D. Cal. 1993) (finding that, although a plaintiff

25   promoted his mark at a trade show with approximately 7,000 attendees, "[t]he fact that [the

26   plaintiff] took no orders for its product at [the trade show] significantly . . . undermines its claim to

27   have created a sufficient association in the public mind between" the mark and the product).

28

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Accordingly, Plaintiff does not plausibly allege that the Muzook Mark was used in a manner that

2  "distinguish[ed] the marked goods in an appropriate segment of the public mind as those of the

3  adopter of the mark," *Dep't of Parks*, 448 F.3d at 1126, and accordingly the SAC does not

4  sufficiently allege that the Muzook Mark acquired goodwill prior to Miller's assignment of the

5  mark to Plaintiff.

6         In sum, the totality of Miller's pre-assignment activity indicates that Miller inquired into

7  and promoted the Muzook idea with musicians and other professionals in the industry, and that

8  Miller intended and prepared to use the Muzook Mark in commerce in connection with goods and

9  services.  The newly alleged facts do not show, however, that Miller used the Muzook Mark such

10 that the mark developed goodwill prior to the assignment.  Plaintiff has thus not alleged that

11 Miller's assignment of the intent-to-use mark to Plaintiff complied with § 1060(a)(1).

12 Accordingly, taking Plaintiff's facts as true and making all reasonable inferences in Plaintiff's

13 favor, the Court finds that Plaintiff has failed to state a claim for trademark infringement under the

14 Lanham Act.

15        The Court stated in its order granting reconsideration that Plaintiff's "failure to cure the

16 deficiencies identified in the Court's March 14, 2016 order will result in a dismissal with

17 prejudice" of Plaintiff's SAC.  ECF No. 99, at 6.  This is Plaintiff's third complaint alleging a

18 Lanham Act claim and the Court's third order dismissing Plaintiff's claim.  The Court accordingly

19 finds that further leave to amend would be futile.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d

20 522, 523 (9th Cir. 2008) ("The decision of whether to grant leave to amend . . . remains within the

21 discretion of the district court, which may deny leave to amend due to . . . repeated failure to cure

22 deficiencies by amendments previously allowed . . . [and] futility of amendment." (internal

23 quotation marks omitted)).  The Court GRANTS Defendant's motion to dismiss Plaintiff's

24 Lanham Act claim with prejudice.

25        **B. Plaintiff's Additional Claims**

26        In addition to asserting a claim under the Lanham Act, Plaintiff's SAC reasserts claims for

27 statutory and common law unfair competition and for common law trademark infringement.  SAC

28
17

1   ¶¶ 66–76.  Defendant's motion to dismiss contends that Plaintiff's assertion of these claims

2   contravenes the Court's order granting reconsideration because the Court granted consideration

3   only as to Plaintiff's Lanham Act claim.  Def. Mot. at 6–7.  Plaintiff responds that the Court's

4   order did not preclude Plaintiff from realleging these claims and that "the same newly alleged

5   facts that support the Lanham Act claim in turn support the California common law claims for

6   trademark infringement and unfair competition."  Pl. Resp. at 16.

7   As the Court stated in its order granting reconsideration, "Plaintiff does not move for

8   reconsideration of the Court's dismissal with prejudice of Plaintiff's claims for common law

9   trademark infringement, and statutory and common law unfair competition."  ECF No. 99, at 4.

10  The Court further stated that Plaintiff's motion for leave to file a motion for reconsideration

11  "raise[d] two basis for reconsideration, both of which pertain[ed] only to the dismissal of

12  Plaintiff's Lanham Act claim."  *Id.*  The Court granted reconsideration because the Court agreed

13  with Plaintiff that *Muzooka II* answered an issue of first impression pertaining to the Lanham Act,

14  that the relevance of certain facts supporting Plaintiff's Lanham Act claim may not have been

15  apparent to Plaintiff at the time of the motion to dismiss, and that "granting Plaintiff leave to

16  amend Plaintiff's Lanham Act claim [was] not necessarily futile."  *Id.* at 5–6.  The Court thus

17  granted reconsideration only as to Plaintiff's Lanham Act claim and vacated only "the portion of

18  its earlier order denying leave to amend as to Plaintiff's Lanham Act claim."  *Id.* at 6.

19  Accordingly, pursuant to the explicit terms of this Court's prior order, Plaintiff cannot now

20  reassert Plaintiff's dismissed claims for common law trademark infringement and statutory and

21  common law unfair competition and allege new facts as to those claims.  The Court did not vacate

22  *Muzooka II*'s dismissal of these claims with prejudice.  *See id.*

23  Nonetheless, even if Plaintiff were authorized to reassert its dismissed claims for common

24  law trademark infringement and statutory and common law unfair competition and to allege new

25  facts as to these claims, Plaintiff's new facts fail to sufficiently state these claims for the same

26  reasons that Plaintiff's new facts fail to support a claim under the Lanham Act.

27  A claim for trademark infringement under California common law requires the same

28  

18

United States District Court
Northern District of California

allegations as a claim for unfair competition under the Lanham Act: (1) a protectable ownership interest in a mark, and (2) the likelihood of the infringing mark being confused with the plaintiff's mark. *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005). A claim for common law trademark infringement "requires a mark to have been used in commerce before a protectible [sic] ownership interest in the mark arises." *Dep't of Parks*, 448 F.3d at 1125. As discussed, Plaintiff's facts do not establish actual use of the Muzook Mark in commerce prior to December 2011, and thus Plaintiff fails to allege a claim for common law trademark infringement.

Similarly, as the Court explained in *Muzooka II*, "Plaintiff's UCL and common law unfair competition claims are premised on the same alleged conduct that underlies Plaintiff's claims for common law trademark infringement and Lanham Act unfair competition." *Muzooka II*, 2016 WL 949004, at *15. Specifically, Plaintiff alleges that "Defendant misappropriated Plaintiff's goodwill associated with the Mark, using the Infringing Designation 'MUZOOKA' for Defendant's own competitive advantage." SAC ¶ 67. Accordingly, because Plaintiff's new facts are not sufficient to allege a claim based on common law trademark infringement and Lanham Act unfair competition, Plaintiff's new facts are also insufficient to state a claim for state statutory and common law unfair competition.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with prejudice. **IT IS SO ORDERED.**

Dated: October 11, 2016

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 15-CV-01720-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS